14

# CIRCUIT COURT OF PRINCE GEORGE COUNTY

Gil J. Lake

 v.

Alfred Mitchell
and Casey Lynn Lafever

 Case No. (Law) CL07-10

David G. Barnes

 v.

Alfred Mitchell et al.

 Case No. (Law) CL07-01

Casey Lynn Lafever,
Administrator of the
Estate of
Vernon T. Lafever

 v.

Alfred Mitchell

 Case No. (Law) CL07-13

 May 23, 2008

By Judge Samuel E. Campbell

This cause came before the court on the Plaintiffs' demand for a jury trial regarding Defendant's Plea of Sovereign Immunity.

## I. *Issues*

A. Is a jury needed to resolve disputed material facts in the case at bar?

B. Should sovereign immunity apply to Officer Alfred Mitchell's actions in the case at bar?

## II. *Short Answer*

A. No. Sovereign immunity often presents questions of law and questions of fact. This hybrid nature has caused a great deal of dispute amongst the courts concerning whether the judge can play the role of fact-finder. The modern trend has been to have disputed material facts determined by a jury and not the court. In addition, the United States Supreme Court has held that the defense of sovereign immunity should be heard no later than the summary judgment phase, due to the fact that sovereign immunity "is an *immunity from suit* rather than a mere defense to liability. . . ." *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). In the case at bar, however, a jury is not needed, as there are no material facts in dispute.

B. No. Defendant fails all four prongs of the test first set forth in *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864 (1980). (1) Mitchell was not performing an emergency function at the time he was driving to the homicide scene; (2) the Commonwealth had no interest in Mitchell's use of excessive speeds; (3) there was not a sufficient degree of control and direction exercised by the Commonwealth over Mitchell; and (4) nor was Mitchell using discretion to act in a manner, which is integral to the Commonwealth's interest of public safety.

## III. *Analysis*

### A. *Is a Jury Needed to Resolve Disputed Material Facts in the Case at Bar?*

The real issue here is not who should make the ultimate determination of whether sovereign immunity is a proper defense, but who should consider any disputed material facts. As sovereign immunity is a question of law, the

court must decide it. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ("immunity ordinarily should be decided by the court. . . ."), and *St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir. 1995) ("The ultimate question of qualified immunity should ordinarily be decided by the court."). Disputed material facts, however, are questions of fact and must be decided by the fact finder/jury. "Though 'immunity ordinarily should be decided by the court'. . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise jury consideration is normally required. . . ." *See Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004), *quoting Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994).

However, the disputed facts must be material in nature to warrant a jury deciding them. The *Oliveira* court held that, "as with any issue of nominally disputed fact, if the state of the evidence is such that reasonable jurors could reach only one conclusion, then the factual issue is appropriate for decision by the court as a matter of law." *See Oliveira* at 649. In order for the court to determine whether the disputed facts are such as should be decided by a jury, the court must know exactly which facts are in dispute. If it is then determined that the facts in dispute are of a material nature, those facts should be decided by a jury. However, if the "state of the evidence is such that reasonable jurors could reach only one conclusion, then the factual issue[s] [are] appropriate for decision by the court. . . ." *Id.*

In the case at bar, plaintiffs suggest that there are disputed facts, which warrant a jury. However, the court finds that none of these "disputed facts" are both material and of such a nature that reasonable jurors could reach more than one conclusion. The following is a discussion of the "disputed facts" presented by plaintiffs' counsel.

### 1. *Was Mitchell's Siren On or Off?*

The court does not find this to be a material issue. A law enforcement officer is not automatically cloaked by the veil of sovereign immunity simply because his siren is activated, nor is he automatically outside its scope simply because his siren is not activated. However, even if this were considered a material issue, the court holds that the evidence presented, including testimony by witnesses, is of such a nature that reasonable jurors could come to only one conclusion. The evidence overwhelmingly pointed to the siren's not being activated until Mitchell engaged the tow truck.

## 2. *Did Mitchell's Speed Exceed His Authority?*

The evidence presented makes it very clear that Mitchell did exceed his authority. According to the General Orders of the Waverly Police Department, "[t]he department . . . imposes on the officer the restriction of driving no faster than 20 miles per hour above the posted speed limit in an emergency response (excluding pursuits)."

Thus, even in an emergency situation, an officer is limited to traveling 20 miles per hour over the speed limit. The court finds that, considering the evidence, reasonable jurors could come to no other conclusion than Mitchell violated the above-mentioned General Orders and, thus, exceeded his authority.

## 3. *Did Mitchell Honestly Believe an Emergency Existed?*

The court finds that, considering the evidence presented, reasonable jurors could come to no other conclusion than Mitchell did not believe an emergency existed. After receiving the phone call from his Chief, Mitchell continued to shave instead of leaving immediately. Reasonable jurors could not conclude that the amount of time it took Mitchell to leave his home is reflective of a law enforcement officer reacting to an emergency call.

## 4. *Did Mitchell Create the Emergency?*

Mitchell could not have possibly created the emergency. First, if the court accepts plaintiffs' argument, there was no emergency. Second, if there was an emergency, the emergency was taking place in a location where Mitchell was not present.

## 5. *Did Mitchell Breach Va. Code § 46.2-804(2) and § 46.2-829?*

This is not material in deciding whether sovereign immunity applies. Law enforcement officers are permitted to violate traffic laws in furtherance of the Commonwealth's purpose to protect public safety. Breaching these statutes does not prove that Mitchell was engaged in ordinary driving and not emergency driving. Therefore, this has no applicability to this sovereign immunity discussion.

As mentioned above, in order to warrant a jury, there must be material facts in dispute. Then, even if there are disputed material facts, if the court determines that reasonable jurors could come to only one conclusion, a jury is

not necessary. The court finds that even those disputed facts, which could be considered material, need not be decided by a jury because reasonable jurors could not differ in their opinions once the evidence is presented. As this is the case, the court finds it proper to decide these disputed facts itself.

## B. *Should Sovereign Immunity Apply to Mitchell's Actions in the Case at Bar?*

The Supreme Court of Virginia outlined a four-prong test for determining whether a government employee is entitled to claim sovereign immunity in *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864 (1980). The factors to be considered are:

> 1. The nature of the function performed by the employee;
> 2. The extent of the state's interest and involvement in the function;
> 3. The degree of control and direction exercised by the Commonwealth over the employee;
> 4. Whether the act complained of involved the use of judgment and discretion.

### 1. *The Nature of the Function Performed by the Employee*

The court finds that Mitchell was involved in ministerial driving. A government employee driving to or from the location at which his governmental function is to be performed is not a discretionary act to which immunity attaches. In *Heider v. Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991), the Supreme Court of Virginia held that an officer engaged in driving after the performance of his duties was involved in ministerial driving. Similarly, in *Friday-Spivey v. Collier*, 268 Va. 384, 601 S.E.2d 591 (2004), the Supreme Court of Virginia, after distinguishing *Friday-Spivey* from *Heider*, held that the driver of a fire department pump truck en route to a scene where a child was locked in a car was also involved in ministerial driving.

In the case at bar, Mitchell was driving to the scene of a suspected homicide. He was not involved in a pursuit, nor do Mitchell's actions demonstrate that he believed there was an immediate threat to public safety. A law enforcement officer who believes there is an emergency situation, which warrants an immediate response, does not take his time to finish shaving. This would be akin to an officer finishing his lunch before responding to a shoot-out. Mitchell was simply en route to the scene of a suspected homicide, in order to perform the governmental function of a law enforcement officer. Thus, Mitchell was engaged in ministerial driving.

## 2. *The Extent of the Commonwealth's Interest and Involvement in the Function*

The function being performed by Mitchell was driving to the scene of a suspected homicide. The Commonwealth obviously has an interest in law enforcement officers getting to suspected homicide scenes, but it certainly does not have an interest in such officers responding in the manner Mitchell did. As stated earlier, as Mitchell was not involved in a pursuit or responding to an immediate threat to public safety, he was involved in ministerial driving. The *Friday-Spivey* court made it clear that ministerial driving does not have sufficient Commonwealth interest for immunity to attach. See *Friday-Spivey v. Collier*, 268 Va. 384, 391, 601 S.E.2d 591 (2004).

In addition, Mitchell was excessively exceeding the posted speed limit while engaged in this ministerial driving. The Commonwealth certainly has no interest in its law enforcement officers driving in such a manner when engaged in ordinary driving. This would present a constant threat to public safety.

## 3. *The Degree of Control and Direction Exercised by the Commonwealth over the Employee*

The court finds that the Commonwealth did not exercise a sufficient degree of control and direction over Mitchell during the time in question. The court in *Messina v. Burden*, 228 Va. 301, 311, 321 S.E.2d 657 (1984), held that "[o]ne of the critical factors in deciding whether a government employee is entitled to immunity is whether he was acting within or without his authority at the time of doing or failing to do the act complained of." In Mitchell's case, the General Orders of the Waverly Police Department lay out what authority its law enforcement officers have and do not have. These orders state in pertinent part:

> *Code 1*: Code 1 responses are authorized for any emergency where the preservation of life is a consideration.
>
> Primary and support units responding to Code 1 calls should proceed rapidly to the location of the emergency by the most direct means (consistent with § 46.2-920), using all emergency warning devices with a paramount consideration for the safety of the public and the assigned officers.

20

The department, however, imposes on the officer the restriction of driving no faster than 20 miles per hour above the posted speed limit in an emergency response (excluding pursuits).

Mitchell did not respond to the call as if it were a Code 1 call. An officer responding to such a call would not take the time to finish shaving, but would leave immediately. In addition, the evidence shows that Mitchell was driving faster than 20 miles per hour above the posted speed limit. Even if the above policies were not part of the department's General Orders, Mitchell would have still been acting outside of his authority as a law enforcement officer. When engaged in ministerial driving, the degree of direction and control exercised by the Commonwealth is minimal if existent at all.

4. *Whether the Act Complained of Involved the Use of Judgment and Discretion*

In *Lohr v. Larsen*, 246 Va. 81, 87, 431 S.E.2d 642 (1993), the Supreme Court of Virginia stated, "a government employee's use of judgment and discretion is an element in determining the issue of immunity. A necessary part of an immunity analysis is the level of discretion required of a government employee in performing his job and whether the employee is exercising that discretion in the discharge of his duties when the allegedly negligent act occurred." The court then went on to state that "the use of judgment and discretion 'is not always determinative'," and that the defendants in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980), were not exercising their judgment and discretion in a manner that furthered the Commonwealth's interest or function, so there was no immunity. See *Lohr v. Larsen*, 246 Va. 81, 87, 431 S.E.2d 642 (1993). "Thus, because the broad discretion vested in the physicians in *James* was not attendant to actions that were integral to the Commonwealth's interest or function, there was no immunity."

Similar to the physicians in *James*, Mitchell's judgment and discretion was not integral to the Commonwealth's interest or function. When employing law enforcement officers the Commonwealth's interest and function is to protect the public safety. Driving down a major roadway at excessive speeds to the scene of a non-emergency, where the preservation of human life is not a concern, is not integral to furthering this interest and function. Therefore, the court finds that, even if this were a situation, which would require an officer to use his judgment and discretion, immunity does not apply, because Mitchell's judgment and discretion were not integral to the furtherance of the Commonwealth's interest or function.

## IV. *Conclusion*

In sum, the court finds that there are no facts in dispute which are material and of a nature where reasonable jurors could come to more than one conclusion. Thus, a jury is not needed for fact-finding purposes. In addition, the court finds that the Defendant fails all four prongs of the sovereign immunity test set forth in *James*. Therefore, sovereign immunity cannot apply.