# CIRCUIT COURT OF THE CITY OF ROANOKE

Litasha Fitzgerald

v.

Denise Perry
and Octavia Johnson,
Sheriff of the City of Roanoke

January 6, 2012

Case No. CL10-1644

By Judge William D. Broadhurst

The parties are before the Court on Litasha Fitzgerald's complaint against Deputy Denise Perry for injuries allegedly sustained in an automobile accident. The defendant has moved that the case be dismissed on the ground of sovereign immunity. Fitzgerald originally named Sheriff Octavia Johnson as a defendant as well. During the course of an evidentiary hearing held on December 14, 2011, the plaintiff conceded that Sheriff Johnson is immune from judgment. Thus the only issue remaining before the Court is the claim of Deputy Perry for sovereign immunity. The Court has carefully considered the evidence, arguments, and authorities so ably presented by counsel in connection with that motion. After mature consideration, the Court is not persuaded at this point in the proceedings that the deputy is entitled to sovereign immunity.

*Factual Background*

The evidence presented sets forth a relatively clear factual scenario. The plaintiff Fitzgerald was an inmate at the Roanoke City jail. Since the prisoner was in need of prenatal care, the Sheriffs staff arranged for an appointment at the office of a local doctor. Deputy Perry was assigned to transport Fitzgerald.

The evidence established that, as a transportation officer, Deputy Perry's duties required that she be aware of numerous security issues while the prisoner was in her charge. These security concerns drove her decisions in many areas of vehicle operation, including the route of travel, parking locations, avoidance of actual threats and diversionary tactics from the prisoner, pedestrians, and other motorists while en route, as well as the safety of the prisoner. With these concerns in mind, Deputy Perry was given considerable latitude and discretion by the Sheriff in executing her duties, all against the backdrop of her primary duty of safe vehicle operation.

On the day in question, Deputy Perry was returning to the jail with the prisoner after the doctor appointment. As she proceeded westbound on Campbell Avenue, Deputy Perry pulled to a stop in order to make a left turn into the jail lot close by the entrance to the jail sallyport. Stopped traffic on the inside lane of eastbound Campbell Avenue blocked her path. A driver on the inside lane of eastbound Campbell stopped and waved the deputy across. Seeing the way clear, the deputy glanced back at the prisoner and then looked ahead and began her left turn in front of the accommodating driver. As she proceeded mid-turn, the deputy saw a vehicle approaching at a high rate of speed on the outside eastbound lane. This vehicle collided broadside with the deputy's vehicle. Deputy Perry agreed that her decision to turn at the motorist's invitation was not affected by the presence of the prisoner.

## Analysis

The legal principles that drive the Court's analysis of this issue are clear. In determining whether a governmental employee is clothed with the protection of sovereign immunity, the Court must consider a four factor test: (1) the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control and direction the state exercises over the employee, and (4) whether the act performed involved the use of judgment and discretion. *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980). The parties agree that consideration of the first three factors should result in Deputy Perry's being entitled to the protection of sovereign immunity. The only dispute is whether consideration of the fourth factor, "whether the act performed involved the use of judgment and discretion," should yield a similar result.

The Court finds the Supreme Court's decision in *Friday-Spivey v. Collier*, 268 Va. 384, 601 S.E.2d 591 (2004), to be instructive. In *Friday-Spivey*, the Supreme Court considered this fourth factor in the context of the operation of a fire engine in transit to a non-emergency call. The Supreme Court reiterated its prior holdings that the quality of judgment and discretion necessary to clothe an employee with the defense of sovereign immunity must rise above that required of "ordinary driving in routine traffic." *Id.* at

391, 601 S.E.2d at 595. In analyzing fireman Collier's contention that he was entitled to sovereign immunity, the Supreme Court observed:

> [I]n *Heider v. Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991) . . . a deputy sheriff collided with a motorcycle as he was leaving a residence where he had just served judicial process. Heider argued "that, as a deputy sheriff who regularly and necessarily operated an automobile to perform his legal duty of serving judicial process, he was entitled to the sovereign immunity defense with respect to the operation of the automobile." We disagreed, holding that Heider was not entitled to sovereign immunity under the circumstances of the case because "the simple operation of an automobile did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer." In that case, the deputy sheriff was like any other person driving a car who "must make myriad decisions." The duty of care in ordinary driving situations "is a ministerial obligation."
>
> Collier distinguishes *Heider* in several respects. The deputy sheriff in that case had completed his governmental purpose and was leaving the scene without any urgency. In contrast, Collier was on his way to accomplish the governmental purpose of delivering the manpower and equipment necessary to rescue an infant locked in a car. Collier cites as examples of discretion and judgment his determination of the route to be taken and the maneuvering of the 40,000-pound pumper truck through traffic. Collier also notes that, unlike the police car in *Heider*, a 40,000-pound pumper truck requires specialized training to operate. Collier essentially argues that he is entitled to sovereign immunity because the inherent difficulty and special skills required in operating a specialized piece of equipment means he "is not like any other driver in routine traffic." Under the facts of this case, we disagree.

*Friday-Spivey v. Collier*, 268 Va. at 389-90, 601 S.E.2d at 593 (internal citations omitted).

The facts of this case are similar. Here, Deputy Perry's duties clearly required her to be vigilant and alert to potential security hazards during her transportation of the prisoner. Like the fire truck driver, execution of her duties during operation of the vehicle required special skills beyond that required of ordinary drivers. However, also like the fire truck driver, those special skills did not impact the deputy's operation of the vehicle at the time of the accident. In both cases, there was no nexus between the accident and the skill required to complete the governmental purpose.

Deputy Perry's argument in this case, reduced to its essence, is that prisoner transportation is fraught with security perils throughout the trip and that these perils "clutter her mind" during all aspects of vehicle operation during prisoner transport. By logical extension, this argument would extend sovereign immunity to all aspects of vehicle operation by every deputy transporting a prisoner due to the need to be aware of security issues throughout the trip. The same type of argument was rejected in *Friday-Spivey*. "Such a rule would create a blanket immunity as a matter of law whenever that vehicle was used to perform a governmental function. . . . [T]his suggested approach has been rejected." *Id.* at 391, 601 S.E.2d at 595. The argument is similarly rejected here.

At this stage in the proceedings, the Court is not persuaded that Deputy Perry's operation of the vehicle at the time of the accident required any greater judgment and discretion than that required of "ordinary driving in routine traffic." Accordingly, the motion is denied.