# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Kristin E. Clemens

v.

Bradley M. Pleasants
and the City of Charlottesville

April 5, 2013

Case No. 11-419

By Judge Paul M. Peatross, Jr.

This matter comes before the Court on the Special Plea of Sovereign Immunity filed by Defendant, Bradley Pleasants. Evidence was presented on January 22, 2013, and the Court took the matter under advisement for the parties to brief the Plea.

### Facts for Purposes of Plea

On the evening of July 31, 2010, there was an automobile accident at night time at the intersection of Preston Avenue and McIntire Road in the City of Charlottesville near the Albemarle County Office Building. Officer Gabriel Mosley of the Charlottesville Police Department ("CPD") was on duty that evening. He received a call from the Emergency Control Center ("ECC") to proceed to the intersection to investigate the accident as a City police officer.

At the time of his arrival and through the time of the accident involving the Plaintiff and Officer Pleasants, it was night time, the intersection was dark, and it was pouring rain. Officer Mosley got out of his vehicle to investigate the accident. During his investigation, he was afraid of getting t-boned, as he almost got hit by another driver, and he felt like he needed assistance. City of Charlottesville Police Officers Rees and Pleasants responded to the ECC 911 Center call for assistance from Officer Mosley.

The video and audio ECC/CPD transmissions reflect that the ECC asked Officer Mosley to respond to an accident that, although not involving any

injury or fire hazards, involved a silver Acura and a black Maxima that were blocking the intersection. The CD of the ECC radio communications also reflects that Police Officer Bradley Pleasants, who was on duty that evening, was requested by the ECC to assist Officer Mosley with traffic control, and Pleasants responded. The call for assistance was a Priority 2 call, which meant Officer Bradley needed to get there as soon as possible, but without his light bar or siren activated.

In route, he communicated with Officer Mosley. Officer Pleasants learned from communicating with Officer Mosley that Pleasants was to come straight to the intersection to block before someone t-boned Mosley. Officer Pleasants asks Mosley over the radio: "Just don't let anybody come through at all?" Officer Mosley responds: "I just want you to pull right behind the car; accident happened against the lane. I already got the left lane blocked off." Upon arriving at the intersection, Officer Pleasants moved into the left hand turn lane on McIntire Road (northbound) and stopped. While cars were proceeding through the intersection to his right in the through lane, Officer Pleasants asked Officer Mosley: "What car do you want me behind?" Officer Mosley responded, "Right behind the Acura."

In order to follow Officer Mosley's instruction, Officer Pleasants intended to travel through the intersection and then, beyond the intersection, make a U-turn. Pleasants waited for approximately ten seconds for cars to clear the through lane before proceeding into the through lane northbound. The traffic light was caution (amber), and as he entered the intersection Officer Pleasants believed the light had not turned red. As Officer Pleasants began moving into the intersection, he activated his emergency lights and reached a speed of approximately 18 miles per hour before colliding with the Plaintiff's vehicle.

### Legal Analysis

"The party asserting a plea in bar bears the burden of proof on the issue presented." *Hawthorne v. Van Marter*, 279 Va. 566, 577 (2010). "To decide the question of immunity, a court must make a close examination of the facts and circumstances," with consideration given to characteristics of the given defendant and the nature of the given defendant's actions, i.e., whether the conduct in question is ministerial in nature or discretionary. *Messina v. Burden*, 228 Va. 301, 310 (1984).

A government employee is not immune from claims of negligence in the performance of ministerial functions. *Stanfield v. Peregoy*, 245 Va. 339, 344–45 (1993). The Supreme Court noted, "[v]irtually every act performed by a person involves the exercise of some discretion," so the mere use of cognitive function "is not always determinative." *James v. Jane*, 221 Va. 43, 53 (1980). What makes a task discretionary for immunity analysis is the degree to which the exercise of discretion is tied to the other three factors identified in *James*: "1. the nature of the function performed by

the employee; 2. the extent of the state's interest and involvement in the function; 3. the degree of control and direction exercised by the state over the employee." *Messina*, 228 Va. at 313.

This case comes down to the fourth factor, whether the act in question involved the use of judgment and discretion. In the cases that rejected sovereign immunity, there is a common theme, in that the vehicle being operated was on the way to or on the way back from a governmental function. In *Friday-Spivey v. Collier*, 268 Va. 384 (2004), a fire truck was making a left turn into a shopping mall parking lot while responding to a call regarding an infant locked in a vehicle. As a Priority 2 call, no lights were activated. In *Heider v. Clemons*, 241 Va. 143 (1991), a deputy sheriff collided with a motorcycle as he was leaving a residence where he had just served judicial process. In *Wynn v. Grady*, 170 Va. 59 (1938), a school bus driver was driving a school bus from a service station toward a schoolhouse and struck a child as it neared the entrance. This occurred before the bus stopped and before any children had boarded the bus.

In contrast, defendants have been able to assert sovereign immunity when actively engaged in the governmental function in question. In *Colby v. Boyden*, 241 Va. 125 (1991), a police officer, with emergency blue lights activated, was pursuing a motorist who had proceeded through a red traffic light. In this case, the pursuit had just begun. In *National R.R. Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402 (1991), a volunteer fire truck driver drove across a railroad crossing without first stopping as required by state law and collided with an Amtrak train. The truck's emergency blue lights and headlights were operating at all times during the response to the call. In *Stanfield v. Peregoy*, 245 Va. 339 (1993), a snowplow driver was able to assert a claim of sovereign immunity after colliding with a vehicle. The court's reasoning in that case is helpful:

> The operation of the truck in snow and ice to effectuate a governmental purpose clearly involved, at least in part, the exercise of judgment and discretion by the driver. For example, he had to decide whether the conditions of a particular street or intersection required plowing or salting, or both. When spreading the salt, the defendant's activity at the time of the accident, he was required to determine the amount of salt to be applied and the area over which it should be spread. Indeed, the exercise of discretion was involved even in the initial decision to undertake the plowing and salting at all.
>
> At the time of the accident, this defendant was not involved in "the simple operation" of the vehicle, nor was he driving "in routine traffic." Perhaps if this accident had happened as defendant was driving his truck en route to the area he was assigned to plow and salt or if it occurred when he was

> returning to his Department's headquarters after completing his function of plowing and salting, he would have been engaged in "the simple operation" of the truck "in routine traffic," a ministerial act.

*Stanfield*, 245 Va. at 343–44. Officer Pleasants' conduct falls somewhere in between. Officer Pleasants was not on the way to or on the way back from a call. He was already at the scene when the accident occurred. While he was following the direction of Officer Mosley as to where to go, Officer Pleasants had to exercise discretion as to the best means to accomplish the stated end. If deciding whether to salt or plow involves sufficient discretion for a finding of sovereign immunity, deciding how to cross a busy intersection, at night, in the pouring rain, also involves sufficient discretion. Unlike the fire truck in *Friday-Spivey*, the sheriff in *Heider*, and the school bus in *Wynn*, this Court does not describe Officer Pleasants' maneuver as "the simple operation" of a vehicle "in routine traffic." Officer Mosley testified that Officer Pleasants was needed "for the safety, really, human safety at that point in time. I was worried about someone getting hurt. Like I said, it was raining real hard that night. To reach back – there was more than just traffic, also been safety for everybody that was there."

Of course, there are notable counter-arguments. Officer Pleasants was not the first responder (unlike in *Colby* and *National R.R. Passenger*), and he did not engage his lights until just before the collision. Officer Mosley's behavior at the scene seems to contradict his testimony somewhat. There does not appear to be a near accident in the video taken by Officer Mosley's camera. He is not directing traffic but talking to each driver of the vehicles in the intersection, returning to his police cruiser, and talking to Officer Rees just before the accident in question occurs. But the Court is judging Officer Pleasants' acts and not the conduct of Officer Mosley.

It has also been argued by Plaintiff's counsel that Officer Pleasants was not yet engaging in any governmental function and that he was simply "on his way" to where he was needed, adjacent to the Acura. However, this Court finds that Officer Pleasants was in the act of engaging in his governmental function when he began his driving after receiving the instructions of Officer Mosley.

## Conclusion

This Court finds the Officer Pleasants was using a degree of judgment and discretion beyond ordinary driving situations in routine traffic and sustains the Plea of Sovereign Immunity.