PRESENT: All the Justices

JASON N. ELLIS, ET AL.

OPINION BY
v. Record No. 240930                    JUSTICE STEPHEN R. McCULLOUGH
                                        DECEMBER 11, 2025
TAYLOR B. JOLLEY


                FROM THE COURT OF APPEALS OF VIRGINIA

       We have on a number of occasions addressed whether a governmental employee benefits

from sovereign immunity while driving a vehicle.  In this case, a city employee was driving a

trash truck.  While driving "normally," the trash truck driver proceeded through a stop sign

without stopping, causing a collision with another vehicle.  The circuit court concluded that both

the City and the driver were protected by sovereign immunity.  The Court of Appeals reversed,

holding that sovereign immunity did not bar the action, for either the City or the employee.  For

the following reasons, we affirm the judgment of the Court of Appeals with respect to whether

sovereign immunity applies to the City's employee, but we reverse the Court of Appeals'

determination that the City itself can be liable.

                                    BACKGROUND

       Jason N. Ellis drives a trash truck for the City of Chesapeake.  Driving such a truck

requires a Commercial Driver's License, or CDL, Class B.  In driving his pre-assigned route,

Ellis must pick up trash cans from around 800 homes, which can amount to over 1,000 cans.

Ellis explained that learning to drive the truck is not difficult, and that in many ways it is similar

to operating a car.  There are, however, some significant differences.  Unlike an ordinary car, the

driver is positioned on the right side of the vehicle.  The truck uses air brakes, which are different

from ordinary vehicle brakes.  Ellis testified that he drives "normally" as he moves the truck

from can to can.  While driving from house to house, Ellis slows down as he approaches a can or

cans, and then, using a joystick, he operates an arm on the side of the truck to pick up the cans and dump them in the truck's hopper. Sometimes it is not possible to pick up a can or an obstacle is present, such as a parked car. In those instances, Ellis must exercise his judgment concerning whether to pick up a particular trash can. He also must monitor the volume of trash in the truck. If his truck becomes too full, Ellis needs to dump the load and then return to his route.

While driving "normally" in the sense that he was not slowing the truck down to pick up a trash can, maneuvering the truck around obstacles, or using the truck's joystick to pick up a trash can, Ellis drove his truck through a stop sign without stopping. Taylor B. Jolley's vehicle collided with the trash truck.

Jolley filed a complaint against Ellis and the City of Chesapeake, seeking to recover for her personal injuries. The City filed a plea in bar, contending that the lawsuit against the City and its employee was barred by the doctrine of sovereign immunity. Following a hearing on the plea in bar, the circuit court sustained the plea and dismissed the case.

A panel of the Court of Appeals reversed. *Jolley v. Ellis*, 82 Va. App. 220 (2024). The Court of Appeals focused its analysis on whether the driver was engaged in ordinary driving or was instead exercising the judgment and discretion necessary to carry out the governmental function of picking up and disposing of the trash. *Id.* at 234-35. The Court of Appeals concluded that the employee was engaged in normal driving at the time of the collision and, therefore, he was not immune. *Id.* at 235. The Court of Appeals held that "the City and Ellis are not entitled to the protection of sovereign immunity." *Id.* This appeal followed.

2

ANALYSIS

Sovereign immunity has long been part of our law, and the doctrine remains "alive and well" in Virginia. *Messina v. Burden*, 228 Va. 301, 307 (1984). Sovereign immunity

> serves a multitude of purposes, including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through . . . vexatious litigation.

*Id.* at 308. "'The existence of sovereign immunity is a question of law that is reviewed de novo.'" *Lee v. City of Norfolk*, 281 Va. 423, 439 (2011) (quoting *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)).

I.      SETTLED SOVEREIGN IMMUNITY PRINCIPLES REQUIRE DISMISSAL OF THE CITY AS A DEFENDANT.

Although the Court of Appeals focused its analysis on whether the employee driver was entitled to sovereign immunity, it stated that "the City and Ellis are not entitled to the protection of sovereign immunity." *Jolley*, 82 Va. App. at 235. The City assigns error to this holding, arguing that sovereign immunity bars the suit against the City. We agree with the City.

Virginia municipalities can act either in a governmental capacity or in a "proprietary" capacity. *Taylor v. Newport News*, 214 Va. 9, 10 (1973). "Sovereign immunity protects municipalities from tort liability arising from governmental functions but not proprietary functions." *Patterson v. City of Danville*, 301 Va. 181, 189 (2022). When exercising its governmental powers, "a municipal corporation is held to be exempt from liability for its failure to exercise them, and for the exercise of them in a negligent or improper manner." *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002) (quoting *Hoggard v. City of Richmond*, 172 Va. 145, 147 (1939)). The function at issue here, the removal of trash, is a governmental function because it

3

"promote[s] public health and comfort." *Ashbury v. City of Norfolk*, 152 Va. 278, 283 (1929). Consequently, the City of Chesapeake "is immune from liability for negligence in performing or in failing to perform" this function. *Taylor*, 214 Va. at 10.

The City of Chesapeake is a named defendant. The City filed a plea in bar, both for itself and for Ellis. The City argued that it is immune from liability for negligence because the removal of trash is a governmental function. In stating that the City does not benefit from sovereign immunity, the Court of Appeals appears to conflate the sovereign immunity of the government employee and that of the City. The *City's* immunity does not hinge on whether its *employee* derivatively benefits from sovereign immunity. The City is immune because trash collection is a governmental function. Therefore, we reverse the holding of the Court of Appeals that the City is not entitled to sovereign immunity.

II.     BECAUSE THE EMPLOYEE WAS ENGAGED IN ORDINARY DRIVING WHEN HE COLLIDED WITH JOLLEY'S VEHICLE, HE IS NOT PROTECTED BY SOVEREIGN IMMUNITY.

A governmental employee can share in the immunity enjoyed by his employer. To effectuate the purposes of the doctrine, it

> cannot be limited solely to the sovereign. Unless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed. For example, limiting protection to the State itself does nothing to insure that officials will act without fear. If every government employee is subject to suit, the State could become as hamstrung in its operations as if it were subject to direct suit. The reason for this is plain: the State can act only through individuals.

*Messina*, 228 Va. at 308.

The "threshold factor" is "whether the entity the employee works for is immune for the activity involved." Kent Sinclair, Sinclair on Virginia Remedies § 2-4[C][1], at 2-30 (5th ed. 2016). As noted above, the City is entitled to sovereign immunity because the function at issue

4

here, the collection of waste, is a governmental function.

We then employ a four-factor test to determine whether a governmental employee shares in the immunity enjoyed by the sovereign. We look to "(1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment." *Colby v. Boyden*, 241 Va. 125, 129 (1991) (citing *Messina*, 228 Va. at 313). The first three factors are not in contention here. Therefore, as is often the case, the fourth factor is decisive.

This is not the first case in which we have been called upon to determine whether sovereign immunity applies to a driver. "In situations involving the exercise of judgment and discretion by government employees while driving, we look to whether the means of effectuating the applicable government function involves 'ordinary driving in routine traffic' versus driving that requires a 'degree of judgment and discretion beyond ordinary driving situations in routine traffic.'" *McBride v. Bennett*, 288 Va. 450, 455 (2014) (quoting *Friday-Spivey v. Collier*, 268 Va. 384, 390-91 (2004)). "Sovereign immunity attaches in the latter situation, but not in the former." *Id.* In addition, the fact that a governmental employee has received "specialized training" to operate "a special or heavy duty vehicle" is not "a controlling factor." *Friday-Spivey*, 268 Va. at 390-91 (citing examples).

"Applying this standard," we held that "an officer engaged in vehicular pursuit or a firefighter responding to a car fire" is protected by sovereign immunity. *McBride*, 288 Va. at 456 (citations omitted). On the other hand, we held that a deputy who had completed serving process and was driving under ordinary conditions was not entitled to sovereign immunity. *Heider v. Clemons*, 241 Va. 143, 144-45 (1991). We observed that,

5

> [w]hile every person driving a car must make myriad decisions, in ordinary driving situations the duty of due care is a ministerial obligation. The defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself. In some instances, the operation of an automobile may fall into this category, such as the discretionary judgment involved in vehicular pursuit by a law enforcement officer. However, under the circumstances of this case, the simple operation of an automobile did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer.

*Id.* at 145 (citations omitted). Likewise, a firefighter who was engaged in "ordinary driving in routine traffic" while responding to a nonemergency "public service call" was not protected by sovereign immunity. *Friday-Spivey*, 268 Va. at 390-91.

Two cases involving school buses further illustrate where we have drawn the line. In *Wynn v. Gandy*, 170 Va. 590 (1938), we held that a school bus driver could be held liable when he was engaged in the simple operation of the bus, approaching the place where he would embark the children. *Id.* at 595. In contrast, in *Linhart v. Lawson*, 261 Va. 30, 36 (2001), the Court held that the school bus driver was entitled to sovereign immunity because the act of "transporting school children, involved discretion and judgment." *Id.* at 36. The record in that case established that there were children on the bus, and that these were special needs students. *Linhart*, Record No. 000291 (Appx. at 19, 25). Although we did not elaborate on this point in the opinion, it stands to reason that once school children are on the bus, particularly special needs students, the driver must continuously monitor the children on the bus and pay attention to the traffic on the road.

Just as police officers or firefighters may at times be engaged in ordinary driving, and later be called upon to drive in situations that involve special risks arising from the governmental activities they are tasked with performing, or must make use of split-second judgment and

discretion in determining how to carry out their employer's governmental purpose, trash truck drivers also must at times engage in driving that is protected by sovereign immunity. Slowing down to pick up a trash can, maneuvering around obstacles to reach the can or using the joystick to pick up a trash can, are a few examples of conduct that would involve special risks or the use of judgment or discretion. Here, however, Ellis testified to driving "normally" at the time of the accident when he proceeded through a stop sign without stopping, causing this accident. At the time of the collision, the truck was not going from house to house picking up trash cans. It was entering an intersection. There was no trash can in the intersection, and no evidence even suggests that the manner in which Ellis entered the intersection was affected by his garbage collection responsibilities. Consistent with our precedent, we conclude that sovereign immunity does not cover the actions of the trash truck driver at that time.

The City invokes the standard of review and argues that we should defer to the factual findings of the circuit court. Although the circuit court held a hearing on the plea in bar, the facts here are not in dispute. The testimony established that the driver of the trash truck could encounter special risks and, further, that at times he was required to exercise judgment and discretion beyond ordinary driving. However, here, the evidence also established that when the driver ran through the stop sign, he was not doing any of those things; rather, he was engaged in normal driving.

The City also cites *Stanfield v. Peregoy*, 245 Va. 339 (1993) to argue that the driver should be immune from liability throughout his route. In that case, however, we held that a snow-plow driver was immune from claims arising from an accident that occurred while he was actively spreading salt on a road. *Id*. at 344-45. The outcome did not depend on whether the driver was on his assigned route. Instead, we emphasized that the combination of "driving and

spreading salt" formed "an integral part of the governmental function" at issue. *Id.* at 344. The snow-plow driver was therefore not engaged in "'the simple operation' of the truck 'in routine traffic.'" *Id.*[*]

CONCLUSION

For the reasons stated, we will reverse the portion of the Court of Appeals' judgment holding that the City does not benefit from sovereign immunity, but we will affirm the portion of the Court of Appeals' judgment holding that the trash truck driver who caused a collision while engaged in ordinary driving does not benefit from sovereign immunity. The case is remanded to the Court of Appeals with instructions to remand the case for trial in the Circuit Court for the City of Chesapeake.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[*] The City also assigns error to the Court of Appeals' use of deposition testimony in its opinion. We do not rely on the deposition testimony in reaching our holding. Accordingly, we need not address the issue further.

8