## National Railroad Passenger Corporation

### v.

## Catlett Volunteer Fire Company, Incorporated, et al.

Record No. 901527

April 19, 1991

Present: All the Justices

*Stephen Earl Baril; John L. Walker, III (Samuel W. Hixon, III; George W. Marget, III; Williams, Mullen, Christian & Dobbins*, on briefs), for appellant.

*Julia B. Judkins (Richard H. Lewis; Kevin Lee Locklin; Randolph E. Trow, Jr.; Lewis, Trichilo & Bancroft; Slenker, Brandt, Jennings & Johnson; Poole & Poole*, on brief), for appellees.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

Following a railway crossing collision between a passenger train and a fire truck, National Railroad Passenger Corporation (Amtrak), owner of the train, filed a complaint in the United States District Court for the Eastern District of Virginia against Catlett Volunteer Fire Company, Incorporated, owner of the fire truck (Catlett), and the estate of Mark Jay Miller, a volunteer fireman who was operating the fire truck and who was killed in the collision (Miller). In the complaint, Amtrak sought recovery of the sum of $910,000 for property damage allegedly sustained by the train in the collision.

In the District Court, Catlett and Miller's estate filed answers alleging they were immune from liability under the doctrine of sovereign immunity. Later, Catlett and Miller's estate filed motions for summary judgment on the immunity issue. The court granted Catlett's motion for summary judgment in full. Initially, the court denied the motion filed by Miller's estate but, upon reconsideration, granted the motion in part, holding that the estate could be held liable only if Miller's conduct constituted gross negligence.

Upon appeal to the Fourth Circuit, Amtrak filed a motion for certification of state law questions to this Court pursuant to our Rule 5:42, and Catlett and Miller's estate filed a response in sup-

port of the motion. Accordingly, the Fourth Circuit certified to this Court the following questions:

a. [Is] Catlett . . . immune from suit pursuant to Virginia Code §27-23.6, 1950 as amended?
b. [Does] Miller [have] qualified immunity and can only be liable if his actions are found to constitute gross negligence?

The pertinent facts are set forth in the Fourth Circuit's order of certification:

On September 28, 1989, members of Catlett responded to the scene of a car fire on private property adjacent to Route 28 in Fauquier County, Virginia. Miller, the volunteer fireman who was driving the lead fire truck, discovered through radio communications that he had driven past the driveway leading into the property where the car fire was burning. He then turned around and proceeded back on the same highway towards the driveway entrance. Again, Miller overshot the driveway. He stopped the fire truck just beyond the driveway entrance to his right and backed up in order to make a right turn. He then made a wide right turn into the driveway. The driveway is unpaved and crosses over the railroad tracks. After Miller turned onto the driveway, he drove slowly up the drive's incline towards the train tracks and proceeded to cross. The truck's emergency lights and headlights were operating at all times during the response to this call. As the fire truck was crossing the railroad tracks, it was hit by a southbound Amtrak train.

Prior to the accident, Catlett required its member drivers, including Miller, to undergo extensive in-house training as to the safe operation of the fire company's vehicles. Clyde M. Lomax, the fire company's chief, instructed the volunteer firemen of the company that they must obey all traffic laws without exception when responding to a call. Lomax specifically recalls instructing his drivers, including Miller, to stop and look both ways before crossing any railroad tracks.

Catlett is a non-profit corporation that exists independently of Fauquier County (the "County"). Catlett's members are volunteers, whom neither Catlett nor the County

compensates for firefighting. Catlett owns its station house and the vehicles that it uses. The County does not control or supervise the daily operations of Catlett and the County is not involved in the selection of Catlett's members, officers or drivers. The County provides no direct funding to Catlett. The only cash disbursement that Catlett receives from the County is a one-thirteenth (1/13) share of a lump sum grant that the County makes available to the Fauquier County Fire and Rescue Association (the "Association"), an unincorporated association that is comprised of appointed members from the thirteen volunteer fire and rescue companies that operate within the County. The County neither directs the Association as to how this grant should be distributed nor requires the Association to account for how the grant is disbursed. The remaining expenditures that the County makes on behalf of the Association are for the payment of bills that the Association submits to the County.

I.

*Is Catlett Immune from Suit Pursuant to Code § 27-23.6?*

■ In pertinent part, Code § 27-23.6 provides as follows:

Any county may contract with any volunteer fire-fighting companies or associations in the county or towns therein for the fighting of fire in any county so contracting . . . . If any contract be entered into by a county the fire-fighting company shall be deemed to be an instrumentality of the contracting county and as such exempt from suit for damages done incident to fighting fires therein.

Amtrak contends that Code § 27-23.6 does not exempt Catlett from liability because the statute requires the existence of a contract between Catlett and the County and no contract was entered into between these parties. Amtrak also contends that the statute only applies when property is damaged incident to the actual fighting of a fire and, hence, does not apply to damage caused by the negligent operation of a fire truck en route to the scene of a fire.

## A.

### The Contract Question

In granting summary judgment in favor of Catlett and Miller's estate, the District Court held that there was no express contract between Catlett and the County but that an implied contract existed between them. Amtrak argues that the District Court correctly found that no express contract existed between Catlett and the County yet "erred in imposing an implied-in-fact contract between them to the detriment of Amtrak."

In finding the existence of an implied-in-fact contract, the district judge stated:

Where an express contract is not made, but might have been, or in equity and good conscience should have been made, the law will impose the duty and infer the necessary promises to effect a contractual relation between the parties. *Virginia Block Co.* v. *Virginia Mutual Insurance Agency, Inc.*, 16 B.R. 771 (W.D. Va. 1982), quoting from volume 4B Mich. J., Contracts, Section 99).

After making this statement, the district judge surveyed the Virginia statutes concerning volunteer fire companies, reviewed the evidence supplied by Catlett concerning "the ongoing [close working] relationship between Catlett and [Fauquier County]," and noted the requirement in Acts 1970, ch. 187, of which Code § 27-23.6 is a part, that "the Act shall be liberally construed." Concluding, the judge said: "Liberally construing Section 27-23.6 in light of the evidence before this court regarding the relationship between Fauquier County and Catlett, the Court finds an implied contract does indeed exist between these two parties."

We think the District Court correctly stated Virginia law on the subject of implied contracts. *See Hendrickson* v. *Meredith*, 161 Va. 193, 200-01, 170 S.E. 602, 605 (1933); *Norfolk* v. *Norfolk County*, 120 Va. 356, 361-62, 91 S.E. 820, 821-22 (1917). We also think the Court properly applied that law to the evidence before it. Accordingly, for the purpose of responding to the remaining questions relating to the application of Code § 27-23.6, we will adopt the District Court's views as our own and find the existence of a contract between Catlett and Fauquier County.

## B.

### *The Meaning of "Incident To"*

One of the remaining questions relating to the application of Code § 27-23.6 is whether the exemption from suit for "damages done incident to fighting fires" encompasses damages resulting from the operation of a fire truck en route to a fire. Amtrak argues that the statute "only exempts a volunteer fire company from suit for property damages 'done incident to' the *actual* act of fighting a fire." (Emphasis in original.)

Amtrak draws this argument from a number of related statutes. Amtrak cites Code § 27-20, which authorizes a fire chief to destroy property in order to prevent the spread of fire, and Code §§ 27-21 and -22, which establish a procedure for recovery of such property damage from the city, town, or county involved. Then, Amtrak cites Code § 27-41, which provides financial relief to volunteer fire fighters killed or injured while fighting fire or "while responding to an alarm or returning from the scene of a fire." "This distinction," Amtrak states, "demonstrates that the drafters of Section 27-23.6 intended for the limited language 'incident to fighting fires' to literally mean fighting fires and to exclude a fire company member's operation of a fire truck to and from the scene of a fire."[1]

■ We disagree with Amtrak's argument concerning the operation of a fire truck en route to the scene of a fire. The word "incident" is defined as

> [s]omething dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance. Used both substantively and adjectively of a thing which, either usually or naturally and inseparably, depends upon, appertains to, or follows another that is more worthy. Used as a noun, it denotes anything which inseparably belongs to, or is connected with, or inherent in, another thing, called the 'principal.'

*Black's Law Dictionary* 762 (6th ed. 1990) (citation omitted).

[1] Because the damage in this case occurred while the fire truck was en route to the scene of a fire, we do not consider Amtrak's further argument that Code § 27-23.6 excludes the operation of a fire truck when returning from a fire scene.

■ We think that both definition and common sense compel the conclusion that the operation of a fire truck en route to the scene of a fire is incident to fighting the fire. Accordingly, we hold that Catlett is entitled to the exemption from suit for damages provided by Code § 27-23.6, and we answer the first certified question in the affirmative.

## II.

### Does Miller Have Qualified Immunity?[2]

Amtrak contends that Miller was not entitled to sovereign immunity because the exemption from suit contained in Code § 27-23.6 is provided to fire-fighting companies but not to individual members of those companies. Amtrak also contends that even if the exemption provided by Code § 27-23.6 is applicable, Miller is not entitled to immunity because driving across railroad tracks without stopping is not the sort of discretionary act upon which immunity may be based.

### A.

### Nature of the Exemption

■ It is true that Code § 27-23.6 does not in specific terms extend its exemption from suit to individual members of fire-fighting companies. But that does not end the inquiry. If a contract exists between a fire-fighting company and a county, Code § 27-23.6 makes the fire-fighting company "an instrumentality of the contracting county and as such exempt from suit for damages done incident to fighting fires." To this extent, the company would be entitled to the cloak of the county's sovereign immunity and, in turn, the cloak may be available to the company's members.

Amtrak argues, however, that the exemption provided fire companies by Code § 27-23.6 is something less than the immunity enjoyed by the county under general law. Amtrak says that Code § 27-23.6 "is an 'exemption from suit' statute, the effect of which is to limit the remedy of a property owner whose property is destroyed in the course of actual firefighting [and for] this reason, the statute does not bestow sovereign immunity on Catlett."

---

[2] For an individual governmental official or employee, the defense of sovereign immunity is not absolute. He or she may be held liable, but only for gross negligence. *See James* v. *Jane*, 221 Va. 43, 53, 267 S.E.2d 108, 113 (1980).

■ We disagree with Amtrak concerning the effect of Code § 27-23.6. While it does limit a property owner's remedy, it also has the wholesome effect of encouraging the provision of fire protection services on a voluntary basis in those areas of the Commonwealth where such services might not otherwise be made available. These public policy considerations no doubt prompted the General Assembly to include in the statute the clause granting exemption to fire companies from suits for damages done incident to fighting fires.

■ The real question, therefore, is whether the exemption provided by the statute is different from the immunity provided by general law. We perceive no legal difference between the terms exemption and immunity. "Exemption" is defined as "[f]reedom from a general duty or service; immunity from a general burden, tax, or charge. Immunity from service of process or from certain legal obligations, as jury duty, military service, or the payment of taxes. *See also* Immunity." *Black's Law Dictionary* at 571.

"Immunity" is defined as "[e]xemption, as from serving in an office, or performing duties which the law generally requires other citizens to perform; *e.g.* exemption from paying taxes. Freedom or exemption from penalty, burden, or duty. Special privilege. *See also* Exemption." *Id.* at 751.

We have used the terms "exemption" and "immunity" interchangeably in several of our decisions. *See Forst* v. *Rockingham*, 222 Va. 270, 276, 279 S.E.2d 400, 403 (1981); *Penn* v. *Manns*, 221 Va. 88, 92, 267 S.E.2d 126, 129 (1980); *Hospital Association* v. *Wise County*, 203 Va. 303, 307, 124 S.E.2d 216, 219 (1962). And a court in a sister state has said that "[a]fter a search of several standard dictionaries, legal dictionaries and other definitions found in numerous cases, the Court finds that the most common synonym for the word "exemption" is the word "immunity." *Coombs* v. *Beneficial Finance Co.*, 549 S.W.2d 327, 328 (Ky. Ct. App. 1977).

■ We, too, think that the terms "exemption" and "immunity" are synonymous. We hold, therefore, that the exemption provided Catlett as an "instrumentality" of Fauquier County is the equivalent of sovereign immunity to the extent of damages done incident to fighting fires.

Referring to a statement we recently made in *Colby* v. *Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991), Amtrak argues that "an emergency vehicle operator who is not a governmental employee

(such as Miller) may be civilly liable upon a showing of simple negligence for his failure to use reasonable care in the operation of such a vehicle under Code § 46.2-920." Consequently, Amtrak says, "no basis exists for Miller's claim that he is exempt from suit under § 27-23.6."

*Colby* involved a Virginia Beach police officer who, while pursuing a motorist who had run a red light, himself ran a red light and struck another motorist, causing her serious injury. The trial court sustained the officer's plea of sovereign immunity and held that the plaintiff's evidence failed to make out a *prima facie* case of gross negligence. 241 Va. at 127, 400 S.E.2d at 186. We affirmed.[3]

Code § 46.2-920 (formerly § 46.1-226), mentioned in Amtrak's argument, figured prominently in the *Colby* decision. The Code section provides in subsection (A) that the driver of an emergency vehicle, under prescribed conditions, may, without subjecting himself to criminal prosecution, disregard certain traffic regulations such as speed limits. Subsection (B) provides that "[n]othing in this section shall release the operator of any such vehicle from civil liability for failure to use reasonable care in such operation."

The plaintiff in *Colby* argued that subsection (B) imposes civil liability for acts of simple negligence. In support of her position, she cited our decisions in *Pullen & McCoy* v. *Nickens*, 226 Va. 342, 310 S.E.2d 452 (1983), *Smith* v. *Lamar*, 212 Va. 820, 188 S.E.2d 72 (1972), *White* v. *John Doe*, 207 Va. 276, 148 S.E.2d 797 (1966), and *Virginia Transit Co.* v. *Tidd*, 194 Va. 418, 73 S.E.2d 405 (1952).

We said, however, that "none of [those] cases held that proof of simple negligence was sufficient to impose civil liability for acts covered under § 46.1-226 [now § 46.2-920] and its predecessors." 241 Va. at 131, 400 S.E.2d at 188. We also said:

---

[3] *Heider* v. *Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991), was decided the same day as *Colby*. In *Heider*, a deputy sheriff had served process at a residence in Fairfax County and had returned to his automobile parked on the shoulder of the road. Pulling out, he struck the plaintiff's motorcycle. The jury awarded the plaintiff a verdict, and the deputy appealed. We affirmed, holding that the deputy's "simple operation of [his] automobile did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer." *Id.* at 145, 400 S.E.2d at 191.

Defining the defendant's duty of care is the first step in determining liability. A second step involves determining whether the conduct alleged . . . amounts to the degree of deviation from that duty — simple or gross negligence, willful and wanton conduct, or intentional misconduct — requisite to establish civil liability in the circumstances of the case.

*Id.* at 131-32, 400 S.E.2d at 188. It was in the next paragraph that we made the statement, cited in Amtrak's argument, about the status of the operator of an emergency vehicle:

Code § 46.1-226 [now § 46.2-920] neither establishes nor speaks to the degree of negligence necessary to impose civil liability on one to whom the section applies. The degree of negligence required to impose civil liability will depend on the circumstances of each case. For example, § 46.1-226 is not limited to governmental officers or employees. Therefore, if the operator of a vehicle in an emergency situation is not a governmental employee, he may be protected under § 46.1-226 from criminal prosecution, but he may be civilly liable upon a showing of simple negligence because the defense of sovereign immunity is unavailable to him.

*Id.* at 132, 400 S.E.2d at 188.

Here, however, Miller was a member of a fire company that was made an "instrumentality" of the county with which the company had contracted for the fighting of fire. Further, on the occasion in question, Miller was the "officer . . . in charge." Given the nature of Miller's position, we see no legal distinction between his status and that of the police officer involved in *Colby*, at least insofar as the availability of the defense of sovereign immunity is concerned.

### B.

#### Use of Judgment and Discretion

Amtrak argues that under the fourth factor of the test enunciated in *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1987), Miller is entitled to invoke the defense of sovereign immunity only if "the act complained of involved the use of judgment and discretion." *Id.* at 313, 321 S.E.2d at 663. Amtrak says that "the act

complained of [here] is Miller's act of driving a fire truck across a railroad crossing without first stopping as required by state law,[4] Catlett's By-Laws, and Catlett's internal safety policies." Hence, Amtrak concludes, "Miller's crossing the railroad tracks without first stopping . . . was a ministerial act, not a discretionary act to which sovereign immunity attaches."

We disagree with Amtrak. In *Colby*, the plaintiff made an argument similar to Amtrak's here, *viz.*, "that [the police officer's] actions involved in the pursuit of a speeding automobile were not entitled to the protection of sovereign immunity because they were ministerial acts and not acts which involved judgment and discretion." 241 Va. at 128, 400 S.E.2d at 186. Further, similar to the situation here, the police officer in *Colby* did not stop for a red light, as required by law. In addition, as Catlett did with its firemen here, "[t]he City exercised administrative control and supervision over [the] activities [of its police officers] through the promulgation of guidelines governing actions taken in response to emergency situations." *Id.* at 129, 400 S.E.2d at 187. What we said there is equally pertinent here:

> [The City's] guidelines do not, and cannot, eliminate the requirement that a police officer, engaged in the delicate, dangerous, and potentially deadly job of vehicular pursuit, must make prompt, original, and crucial decisions in a highly stressful situation. Unlike the driver in routine traffic, the officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation. Such situations involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective.

*Id.* at 129-30, 400 S.E.2d at 187. We cannot logically distinguish the act of crossing a railroad track without stopping in order to extinguish a fire from running a red light in order to apprehend a traffic offender. We think both acts involve the exercise of judgment and discretion.

---

[4] Code § 46.2-885 provides that, except in cities and towns, whenever a person driving a vehicle approaches a railroad grade crossing under certain circumstances, he shall stop "and shall not proceed until he can do so safely."

██ We hold, therefore, that Miller is entitled to invoke the defense of sovereign immunity and is liable only for gross negligence.[5] Accordingly, we answer the second certified question in the affirmative.

*First Certified Question — Answered in the Affirmative.*
*Second Certified Question — Answered in the Affirmative.*

---

[5] Both sides to this controversy cite *Meagher* v. *Johnson*, 239 Va. 380, 389 S.E.2d 310 (1990). *Meagher* was a personal injury action against a Richmond police officer whose cruiser struck and injured a person he was attempting to apprehend. We reversed a judgment for the plaintiff because the evidence was insufficient to prove gross negligence. As noted in *Colby*, 241 Va. 129 n.1, 400 S.E.2d 187 n.1, *Meagher* did not involve the issue of the applicability of sovereign immunity.