# CIRCUIT COURT OF THE CITY OF NORFOLK

Senora Turner

v.

City of Norfolk
and Timothy Banks

May 25, 2010

Case No. (Civil) CL09-7987

By Judge Louis A. Sherman

This case came before the Court on Plaintiff Senora Turner's appeal from an adverse decision in the Norfolk General District Court. In accordance with § 16.1-106 of the Code of Virginia, the Court considers the case *de novo*.

On May 6, 2010, Defendants Timothy Banks and the City of Norfolk brought on for hearing their Special Pleas of Governmental Immunity to Turner's Motion for Judgment. Since Turner concedes that the doctrine of sovereign immunity bars her claim against the City, this Court considers only Banks' Special Plea of Governmental Immunity. The issue is whether the doctrine of sovereign immunity bars Turner from recovering damages against Banks, an employee of the City, for his alleged simple negligence. Having considered the parties' pleadings and oral and written arguments, the Court finds that the doctrine of sovereign

immunity bars Turner's action against Banks, and therefore, sustains Banks' Special Plea of Governmental Immunity.

## *I. Background*

For the purposes of considering Banks' Special Plea of Governmental Immunity, this Court accepts as true the facts as stated in Turner's pleadings. *See Lostrangio v. Laingford*, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001).

On February 20, 2009, Turner "was operating her vehicle in the 900 Block of Avenue E" in the City of Norfolk. (Bill of Particulars ¶ 1.) Turner proceeded to pass a garbage collection truck driven by Banks (*id.* at ¶ 2), an individual who was working for the City and operating the truck "in the scope of his employment with" the City (*id.* at ¶ 6).

When Turner approached and began to pass the truck, Banks was "picking up garbage at the curb of the street." (*Id.*) "While Turner was passing said truck … Banks[] pulled away from the curb, striking Turner's vehicle." (*Id.* at ¶ 3.) This resulted in damages to Turner's car amounting to $1,099.54,[1] for which Turner seeks recovery. (*Id.* at ¶ 4.)

## *II. Discussion*

### A. *Standard of Review*

Banks' Special Plea of Governmental Immunity is a plea in bar. "The defensive plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party carries the burden of proof on that issue of fact." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996) (citing *Campbell v. Johnson*, 203 Va. 43, 47, 122 S.E.2d 907, 909 (1961)). If the parties fail to introduce evidence, the trial court must rely solely on the pleadings in considering the plea in bar, and it must deem true the facts as stated in the plaintiff's pleadings. *Lostrangio v. Laingford*, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001). ("[W]here no evidence is taken in

---

[1] Turner may intend the amount of damages to be $1,094.54, as reflected by the submitted estimate of damages. However, the Court's decision in this case renders the point moot.

support of a plea in bar, the trial court … consider[s] solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's motion for judgment are deemed true." (citation omitted)).

B. *Principles of Sovereign Immunity for a Government Employee*

In this case, the Court confronts the issue of whether the doctrine of sovereign immunity bars recovery for simple negligence from an employee of a municipal corporation. The Court takes judicial notice of the City's status as a "municipal corporation." "The existence of sovereign immunity is a question of law" to be determined by the Court. *Gray v. Virginia Sec'y of Transp.*, 276 Va. 93, 97, 662 S.E.2d 66, 68 (2008). A government employee is potentially eligible for the protections afforded by sovereign immunity when he is working for an immune governmental entity. *Friday-Spivey v. Collier*, 268 Va. 384, 387–88, 601 S.E.2d 591, 593 (2004); *see also Messina v. Burden*, 228 Va. 301, 312, 321 S.E.2d 657, 663 (1984) ("If an individual works for an *immune* governmental entity then, in a proper case, that individual will be eligible for the protection afforded by the doctrine." (emphasis added)). However, "a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence." *Colby v. Boyden*, 241 Va. 125, 128, 400 S.E.2d 184, 186 (1991) (citing *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); *Sayers v. Bullar*, 180 Va. 222, 229, 22 S.E.2d 9, 12 (1942)).

In addition, "the question of whether a particular act [of a government employee] is entitled to the protection of sovereign immunity depends upon whether the act under consideration is classified as discretionary or ministerial in nature." *Id.* at 128–29, 400 S.E.2d at 186. Acts that are discretionary are entitled to sovereign immunity, while ministerial acts are not. *See id.* at 129–30, 400 S.E.2d at 187. The Virginia rule for determining whether a given act is discretionary or ministerial is:

> the four-factor test enunciated in *James* and reiterated in *Messina, Lentz v. Morris*, 236 Va. 78, 372 S.E.2d 608 (1988), and *Gargiulo v. Ohar*, 239 Va. 209, 387 S.E.2d 787 (1990). The four factors are: (1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the

government; and (4) whether the act in question involved the exercise of discretion and judgment. *Messina*, 228 Va. at 313, 321 S.E.2d at 663.

*Colby*, 241 Va. at 128–29, 400 S.E.2d at 186–87 (citations omitted).

## C. *Threshold Issues: Working for an Immune Governmental Entity and Degree of Negligence Alleged*

Banks meets the threshold requirement of entitlement to immunity from liability for simple negligence: working for an immune governmental entity at the time of the accident. "The municipal collection of garbage is a governmental function" that affords a municipal corporation immunity to liability for negligence. *Taylor v. Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973) (*per curiam*). Since the City's involvement in this action relates solely to an agent's alleged negligence in the collection of garbage, the City is immune from any potential liability. Turner agrees that Banks was working for the City and acting within the scope of his employment at the time of the accident; thus, he was working for an immune governmental entity.

The Court also observes that Turner is alleging *simple* negligence, Banks' striking of Turner's car with the garbage truck. Turner's pleadings lack any reference to conduct on the day in question that would demonstrate gross negligence, "an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men. . . ." *Finney v. Finney*, 203 Va. 530, 533, 125 S.E.2d 191, 193 (1962). Because gross negligence is not a factor in this case, sovereign immunity remains a viable defense for Banks. *See Colby*, 241 Va. at 128, 400 S.E.2d at 186.

## D. *The First Three Factors of the James Four-Factor Test*

With respect to the first factor of the *James* four-factor test for determining whether an employee of an immune governmental entity is also cloaked with immunity, Banks states, "The removal of garbage is a core government function and Mr. Banks was carrying out that function when the accident occurred." (Mem. of Law in Supp. of Def. Banks' Special Plea of Governmental Immunity 3 [hereinafter "Mem. in Supp."].) As noted above, "[t]he municipal collection of garbage is a governmental function." *Taylor*, 214 Va. at 10, 197 S.E.2d at 210. As the driver and

operator of the City's garbage truck, Banks essentially was an arm of the municipal corporation being used for the direct, specific, and exclusive purpose of carrying out the collection of municipal waste, one of the City's governmental functions. Since the nature of Banks' function at the time of the accident was specifically and exclusively governmental, Banks meets the first *James* factor. Turner makes no argument with respect to the first factor.

Whether Banks meets the second *James* factor depends on the significance of the City's interest and involvement in the municipal collection of garbage. A greater governmental interest will increase the likelihood of the employee's sovereign immunity. *See James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980) (finding that the governmental entity's interest and involvement in the employees' activity were not significant enough to warrant the extension of sovereign immunity to the employees). Banks meets the second factor because the governmental entity, the City, has a significant interest and involvement in the municipal collection of garbage. Banks asserts:

> The City Charter provides for the creation of the Department of Public Works and requires the director of the department to take charge of the collection and disposal of waste. City Charter §§ 52, 54. The Norfolk City Code established the Division of Waste Management within the Department of Public Works, and specifically regulates the collection and disposal of solid waste. Norfolk City Code § 2-327.2(c) and § 41-4, *et seq.*

(Mem. in Supp. 3.) The Court finds this to be an accurate statement regarding the City of Norfolk's Code and Charter and that the cited provisions are sufficient for demonstrating that the City has a significant interest and involvement in the municipal collection of garbage. Hence, Banks meets the second factor, and Turner does not contest this in her pleadings.

With respect to the third *James* factor, the more a governmental entity exercises control and direction over its employees, the greater the likelihood of immunity for those employees. *Lohr v. Larsen*, 246 Va. 81, 88, 431 S.E.2d 642, 645–46 (1993). In support of his position that the City "exercises a high degree of control and direction over his work" (Mem. in Supp. 3), Banks submitted an affidavit that details the extent of the City's control and direction over how Banks carries out his duties as the driver

and operator of the garbage truck. According to the affidavit, Banks was subject to the direction and control of his supervisors, and, ultimately, the Director of Public Works; performed his job in accordance with the Norfolk City Charter, the Norfolk City Code, and the dictates of the City's Department of Public Works/Division of Waste Management; obtained a commercial driver's license from Virginia's Department of Motor Vehicles pursuant to the requirements of his position as a "Refuse Collector, Senior"; completed on-the-job training to the satisfaction of his supervisors; and attended weekly meetings for the purposes of training and reviewing the rules of the Division of Waste Management. (Mem. in Supp., Ex. 1 ¶¶ 3, 4, 6, 7, 8.) In other words, the City exercises extensive control and direction over Banks in his capacity as a "Refuse Collector, Senior." The extent to which Banks must follow city ordinances, department/division policies, and the direction of his superiors is sufficient for the purpose of satisfying the third factor of the *James* test. Turner does not dispute the statements in Banks' affidavit or the arguments that the City exercises a high degree of control and direction over Banks as a refuse collector, senior.

E. *Fourth Factor: Exercise of Discretion and Judgment*

The parties mainly disagree on the issue presented by the fourth factor of the *James* test: whether the government employee's act involved the exercise of discretion and judgment. With respect to a government employee operating a vehicle for the purpose of carrying out a governmental function of his employer municipal corporation:

> The defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself. In some instances, the operation of an automobile may fall into this category, such as the discretionary judgment involved in vehicular pursuit by a law enforcement officer. *See, e.g., Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991); *see also Meagher v. Johnson*, 239 Va. 380, 389 S.E.2d 310 (1990). However, under [different] circumstances ... the simple operation of an automobile d[oes] not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of

effectuating the governmental purpose of the driver's employer.

*Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991) (citation omitted). The Supreme Court of Virginia's cases distinguishing between discretionary and ministerial operation of a motor vehicle leads this Court to the following conclusion: a refuse collector's act of driving and operating a garbage truck, in the context of collecting municipal waste in the course of employment for a municipal corporation, involves judgment and discretion that are necessary to carry out the municipal corporation's governmental function of collecting municipal waste. When engaged in such an act, a refuse collector meets the fourth factor of the *James* test.

In *Stanfield v. Peregoy*, 245 Va. 339, 429 S.E.2d 11 (1993), the Supreme Court of Virginia considered a case in which the city employee/operator ("driver") of a city-owned "combination snow plow/salt truck" ("truck") hit a bus during a snowstorm, thereby injuring two bus passengers ("victims"). *Id.* at 341, 429 S.E.2d at 11–12. The driver collided with the bus after he had salted three streets and was proceeding to salt a fourth. *Id.* at 342, 429 S.E.2d at 12. "According to [the driver], his truck skidded on ice into the intersection and collided with the bus carrying the [victims]." *Id.* The Court observed:

> The operation of the truck in snow and ice to effectuate a governmental purpose clearly involved, at least in part, the exercise of judgment and discretion by the driver. For example, he had to decide whether the conditions of a particular street or intersection required plowing or salting, or both. When spreading the salt, the defendant's activity at the time of the accident, he was required to determine the amount of salt to be applied and the area over which it should be spread. Indeed, the exercise of discretion was involved even in the initial decision to undertake the plowing and salting at all.

*Id.* at 343–44, 429 S.E.2d at 13 (citations omitted). Based in part on this reasoning, the Court affirmed the trial court's finding that the driver was protected by the doctrine of sovereign immunity. *Id.* at 340, 345, 429 S.E.2d at 11, 14. However, the Court did note, "Perhaps if this accident occurred when [the driver] was returning to his Department's headquarters after completing his function of plowing and salting, he would have been

engaged in 'the simple operation' of the truck 'in routine traffic,' a ministerial act." *Id.* at 344, 429 S.E.2d at 13.

In *Linhart v. Lawson*, 261 Va. 30, 540 S.E.2d 875 (2001), the Court considered a case in which a school bus driver, the employee of an immune governmental entity, a school board,[2] struck a vehicle with the school bus he was driving, thereby injuring an individual in the vehicle. *Id.* at 32, 540 S.E.2d at 876. The Court found that "the act complained of, transporting school children, involved discretion and judgment." *Id.* at 36, 540 S.E.2d at 878. Based in part on this finding, the Court found that the bus driver's act met the four-factor *James* test, and therefore, it affirmed the "judgment of the trial court sustaining [the bus driver's] plea of sovereign immunity." *Id.* at 37, 540 S.E.2d at 878.

In *Wynn v. Gandy*, 170 Va. 590, 197 S.E. 527 (1938), the Court reached the opposite conclusion with respect to a bus driver. *Id.* at 595, 197 S.E. at 529. In *Stanfield*, the Court explained why it had reached that conclusion in *Wynn*:

> There, a school bus driver had taken a county bus to be serviced. As he drove the empty bus from the service station toward a county school, children began crowding around and running after the moving bus as it neared the entrance to the school building. Before the bus stopped and before any children had boarded the bus, a child was injured when he fell or was pushed to the ground beneath a wheel of the bus....
>
> [T]he Court considered defendant's contention that he was immune from suit because he was operating a county vehicle "which was used for the transportation of children." The Court decided that the driver was not immune and, without elaborating, merely set forth the general rule that public officers are liable for injury resulting from their

---

[2] While the *Linhart* Court found that the General Assembly limited the school board's immunity via statute, it concluded that such a finding did not affect the immunity analysis of the school board's employee bus driver. *See id.* at 36, 540 S.E.2d at 878 (concluding that the limited statutory preclusion of the employer school board's immunity did not "abrogate an employee bus driver's immunity").

negligence in the performance of duties that do not involve judgment or discretion but are purely ministerial.

In *Wynn* ... the defendant was engaged in "the simple operation" of the bus, approaching the place where he would embark on his governmental duty of transporting children....

[N]oteworthy is the fact that the defendant claimed immunity merely because he was operating a government vehicle "used" or utilized for the transportation of children, not because he was actually engaged in their transportation at the time.

*Stanfield v. Peregoy*, 245 Va. 339, 344–45, 429 S.E.2d 11, 14 (1993) (citations omitted).

The *Stanfield, Linhart,* and *Wynn* cases establish what this Court believes are clear parameters for when a government employee's operation of a vehicle involves judgment and discretion or is simply ministerial. According to *Stanfield,* the operator of a snow plow/salt truck acts with judgment and discretion in effectuating a governmental function when actually engaged in dispersing salt in a snow emergency along his route. However, the *Stanfield* Court speculated that, if the operator of that truck had completed his route and was returning to department headquarters, he would be engaged in the simple operation of the truck in routine traffic, a ministerial act. Likewise, according to *Stanfield, Linhart,* and *Wynn,* a school bus driver actually engaged in transporting children uses judgment and discretion in accomplishing that governmental function, but he engages in the simple operation of the bus when the bus is empty and he is merely traveling to the place of duty. Hence, by analogy, a refuse collector operating a garbage truck and collecting waste along his route engages in the exercise of judgment and discretion to effectuate the governmental function of waste collection; however, the refuse collector's operation of the garbage truck would be reduced to "the simple operation" of the truck in "routine traffic," a ministerial act, if he were merely traveling to or from the waste collection route.

For the purposes of sovereign immunity, a refuse collector engaged in his governmental duty of collecting waste is logically indistinguishable from a school bus driver transporting children or a snow plow/salt truck operator salting roads. *Cf. National RR. Passenger Corp. v. Catlett Volunteer Fire Co.,* 241 Va. 402, 413, 404 S.E.2d 216, 222 (1991) ("We cannot logically distinguish the act of crossing a railroad track without stopping in order to extinguish a fire from running a red light in order to

apprehend a traffic offender. We think both acts involve the exercise of judgment and discretion.").

With respect to the case at bar, Banks states that, on the day in question, he was driving:

> a single-operator automated truck. The truck is driven from the right-hand side seat only, and all garbage collection functions are also carried out from the right seat, to include operation of the lift arm/grabber assembly and the garbage compaction unit. In order to collect and empty refuse cans, I am required to maneuver and position the vehicle in such a way as to be able to reach the can, empty it, and move to the next collection location in an efficient manner without impacting parked cars, cars being driven on the street, and other stationary and moving objects.

(Mem. in Supp., Ex. 1, ¶ 10.) These activities clearly require the use of judgment and discretion in effectuating the City's governmental function of collecting municipal waste; Banks was doing more than simply operating his vehicle in routine traffic on his way to or from his waste collection route. Turner concedes that at the time of the incident, Banks was operating the Truck along a waste collection route, not driving it to or from his base of operations. (Bill of Particulars ¶ 2 ("While passing a garbage collection truck driven by Defendant, Timothy Banks, [Banks] was working for the Defendant City of Norfolk, picking up garbage at the curb of the street.").) Consequently, Banks satisfies the fourth factor of the four-factor *James* test.

In arguing that the driving of "a City garbage truck is not an exercise of judgment or discretion in the performance of the governmental function of collecting garbage," Turner relies chiefly on *Heider v. Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991). (Mem. of Law 1–5.) In that case, the Supreme Court of Virginia considered the issue of "whether a sheriff is entitled to the defense of sovereign immunity when he is sued for damages incurred as a result of his operation of an automobile while serving judicial process." *Heider*, 241 Va. at 144, 400 S.E.2d at 190. After serving process, the sheriff had collided with a motorcycle while pulling out of his parking space. *Id.* The Court concluded:

> While every person driving a car must make myriad decisions, in ordinary driving situations, the duty of due care

is a ministerial obligation. ... [U]nder the circumstances of this case, the simple operation of an automobile did not involve special risks arising from the governmental activity, or the exercise of judgment about the proper means of effectuating the governmental purpose of the driver's employer.

*Id.* at 145, 400 S.E.2d at 191. Turner argues that *Heider* controls the case at bar: "In our case, there is no governmental discretion in driving a garbage truck from the curb into the vehicular way, namely, the street. The defendant only had to see that the way was clear." (Mem. of Law 3.)

The Court finds that the case at bar is distinguishable from *Heider* and disagrees with Turner's position. In *Heider*, the service of judicial process involved no special use or operation of the sheriff's vehicle above and beyond an ordinary driver's use and operation of an ordinary vehicle. Hence, the sheriff's operation of the vehicle required no judgment or discretion and was a ministerial act. Conversely, in the case at bar, Banks, as a refuse collector engaged in the activity of collecting waste along his route, was required to use functions of his vehicle, such as an arm grab/lift and a compactor, that no ordinary driver needs to contemplate. This had to be done on city streets in the midst of traffic. Further, Banks had to maneuver the garbage truck around both moving and parked cars, as well as other obstacles, while positioning it next to the garbage containers to be emptied. All these activities required judgment and discretion in the operation of the garbage truck and the collection of waste.

The Court also observes that Turner's argument, that "there is no governmental discretion in driving a garbage truck from the curb into the vehicular way" (Mem. of Law 3), can only succeed if either: (1) refuse collectors operating garbage trucks pass in and out of sovereign immunity as they proceed along their collection routes or (2) refuse collectors operating garbage trucks are never entitled to sovereign immunity. The first situation assumes that Turner agrees that a refuse collector is entitled to sovereign immunity once he has stopped the garbage truck and initiated the process of collecting waste. Pursuant to Turner's arguments, the entitlement to sovereign immunity would end once the refuse collector temporarily ceases collecting waste and begins moving the garbage truck to the next area of collection. This Court does not agree that either the General Assembly or the courts intended such a "start/stop" operation of sovereign immunity. If that were the case, the Court presumably would not have found the school bus driver in *Linhart* cloaked with sovereign

immunity, as the accident in that case appears to have occurred while the school bus driver was *driving* the school bus, not stopping to load or unload children.

If sovereign immunity does not operate in such a manner, then Turner's arguments can only prevail if refuse collectors operating garbage trucks are never entitled to sovereign immunity. Such is not the case because, as discussed above, the operation of a large, mechanically complex garbage truck in the collection of waste requires a significant amount of judgment and discretion.

## III. Conclusion

For the foregoing reasons, the doctrine of sovereign immunity bars Plaintiff Turner's claim of simple negligence against Banks. The Court therefore sustains Banks' Special Plea of Governmental Immunity and dismisses Turner's Motion for Judgment against Banks with prejudice.