COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Fulton, Lorish and White
Argued at Norfolk, Virginia

TAYLOR B. JOLLEY

                                                    OPINION BY
v.        Record No. 0870-23-1            JUDGE LISA M. LORISH
                                               OCTOBER 1, 2024
JASON N. ELLIS, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. McDonald, Judge

Richard J. Davis, III (Kozak & Davis, P.C., on brief), for appellant.

Chanel Ann Gray (Chesapeake City Attorney's Office, on brief),
for appellees.

While driving a garbage truck between scheduled stops, Jason Ellis ran through a stop

sign and collided with Taylor Jolley's car.  The circuit court found that sovereign immunity

shielded Ellis and the City of Chesapeake from suit, reasoning that the entire process of driving a

garbage truck involved ongoing discretion that did not begin and end each time he stopped to

collect garbage along the route.  Many decisions in the Commonwealth have addressed the

question of when a government employee driving a vehicle is immune from suit.  When the

operation of a vehicle involves ordinary driving, the employee's actions are ministerial, not

discretionary, and ministerial acts are not cloaked in immunity.  Although sometimes a garbage

truck driver could engage in activities involving discretion and judgment between scheduled

stops, that was not the case here.  Ellis admitted he was driving normally at the time of the

accident.  Because our caselaw requires a court to focus not on the job description as a whole, but

on the employee's actions at the time of the accident, we reverse.

BACKGROUND

About ten percent of the way into his assigned trash collection route for the day, Ellis, an equipment operator for the City of Chesapeake, approached an intersection with a two-way stop sign. Rather than come to a complete stop, he intentionally "roll[ed] through the stop sign." Though Ellis looked for oncoming traffic, he testified that garbage trucks "have blind spots and sometimes vehicles will pass just that fast." As Ellis rolled into the intersection, Jolley's car, coming from the right and without a stop sign, collided with the truck and flipped on its side. Jolley sustained serious injuries. Following the accident, Ellis was charged and convicted for failing to obey the stop sign.

Jolley sued Ellis and the City of Chesapeake in the Circuit Court of Chesapeake, alleging simple negligence. Ellis and the City responded with a special plea of sovereign immunity, and the trial court held an *ore tenus* hearing. At the hearing, Ellis described the accident and the actions involved in completing a garbage collection route. He explained that when he approaches a can on the route, it is "up to me, the operator, whether I get out and move it or if it's where I can grab the can with the claw and dump it into the truck." Ellis has about 800 houses on his route, and "every time I dump my can, my counter counts" the number of cans. Normally, he can put 400 to 500 cans on a truck before he has to unload it. However, during "certain times of the year" there is more garbage to collect, which requires Ellis to leave his route before he is halfway through to "dump that load off" before going "back to where [he] left off." When asked if "between cans, are you doing anything different than if you were just normally driving down the street in your own car," Ellis said, "no." Instead, what Ellis does between stops is "look for [his] surroundings and make sure all is clear," so he can "get [the] can, dump it, and go to the next one."[1]

---

[1] This testimony from Ellis's deposition was submitted as an exhibit before the trial court.

The court sustained the special plea with prejudice, finding the City and Ellis immune from suit. The circuit court found that "during this period en route going from can to can, having been ten percent in his route, counting every single bin that is dumped into his can," there were "special risks" for this unique process and that "the exercise of judgment and discretion were required throughout this route." The court reasoned that Ellis "counts every bin at each home," and makes a "determination as he approaches each and every bin," and then exercises that discretion "prior to ever extracting that arm, [or] touching that joystick." The court determined that the entire act of garbage collection required ongoing discretion and judgment, notwithstanding the ordinary driving between individual stops along the route. As a result, the court granted the City and Ellis immunity from suit.

Jolley appeals.

ANALYSIS

"The existence of sovereign immunity is a question of law that is reviewed de novo." *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004). "If the parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010).

To determine whether a government employee is entitled to sovereign immunity, we apply a four-factor test. *Friday-Spivey v. Collier*, 268 Va. 384, 387-88 (2004). The factors a court must evaluate are:

> (1) the nature of the function performed by the employee;
> (2) the extent of the state's interest and involvement in the function;
> (3) the degree of control and direction exercised by the state over the employee; and
> (4) whether the act complained of involved the use of judgment and discretion.

*Messina v. Burden*, 228 Va. 301, 313 (1984) (quoting *James v. Jane*, 221 Va. 43, 53 (1980)). If the facts of the case meet the criteria of the test, application of sovereign immunity is appropriate. *Heider v. Clemons*, 241 Va. 143, 145 (1991). Only the fourth factor is disputed here: whether Ellis used judgment and discretion at the time of the collision.[2]

Ministerial acts, which do not involve the exercise of judgment and discretion, are not entitled to immunity. *Id.* Because "[v]irtually every act performed by a person involves the exercise of some discretion," the mere presence of any "discretion is not always determinative." *Pike v. Hagaman*, 292 Va. 209, 217 (2016) (alteration in original) (quoting *James*, 221 Va. at 53). Instead, a ministerial act is "one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Dovel v. Bertram*, 184 Va. 19, 22 (1945) (quoting *Flournoy v. Jeffersonville*, 17 Ind. 169, 174 (1861)). For example, negligent acts during the "routine maintenance of municipal water supply facilities are nonimmune ministerial acts of a proprietary function." *Cunningham*, 268 Va. at 636. But where a city was "exercising its discretionary legislative power of designing the means to deliver water service" by "planning, designing and implementing the planned design of its municipal water service to provide appropriate water pressure," the actions were discretionary and sovereign immunity applied. *Id.* at 637.

Drawing the line between discretionary and ministerial acts is particularly difficult when a government employee is involved in an accident while driving a government vehicle. In such

---

[2] The Supreme Court has long recognized "the removal of garbage by a municipality [as] a governmental function," carried out "primarily to promote [the] health and comfort" of the public. *Ashbury v. Norfolk*, 152 Va. 278, 283 (1929). *See also Taylor v. City of Newport New*s, 214 Va. 9, 10 (1973) ("The municipal collection of garbage is a governmental function."). And municipal vehicles collecting trash have long been deemed to fall within the ambit of sovereign immunity in suitable cases. *See Ashbury*, 152 Va. at 280-83, 292.

- 4 -

accident cases, "we look to whether the means of effectuating the applicable government function involves 'ordinary driving in routine traffic' versus driving that requires a 'degree of judgment and discretion beyond ordinary driving situations in routine traffic.'" *McBride v. Bennett*, 288 Va. 450, 455 (2014) (quoting *Friday-Spivey*, 268 Va. at 390-91). "Whether the act in question involves the requisite exercise of discretion such that sovereign immunity applies depends on whether that act embraces 'special risks' in order to effectuate a governmental purpose." *Id.* at 456.

One way to distinguish acts of driving is to assess whether a vehicle is serving as a means of transportation to get to the place where the governmental function is to be performed, or whether driving the vehicle is the means of carrying out the government function. Sovereign immunity tends to protect drivers in the latter case because in addition to operating the vehicle, the driver must exercise discretion and judgment to carry out the governmental purpose. In contrast, merely driving a vehicle to the place where a governmental function is to be performed is analogous to an "ordinary driving situation" that does not involve special risks or a high degree of discretion. A series of cases illustrate the kind of judgment and discretion that exceeds regular driving behavior and rises to a "special risk" level.

In *Wynn v. Gandy*, 170 Va. 590, 595 (1938), for example, a school bus driver, operating an empty bus, drove to the school to begin his route for the day and injured a student while pulling onto the school grounds. Because the school bus was only a means of transportation to get to the place where the driver would start transporting the children, the Court found that he was engaged in ordinary, normal driving—a ministerial activity. *Id.* The fact that the driver had to drive the bus to the school before he could begin transporting the children did not alter the Court's determination that this act was ministerial and did not warrant immunity. *Id.* Likewise, in *Heider v. Clemons*, a sheriff merely used a police car as a means of transportation to serve judicial process at someone's home. 241 Va. at 144. Thus, when the sheriff got into a car

- 5 -

accident *after* serving process, he was not immune. *Id.* at 145. Observing that "every person driving a car must make myriad decisions," the Supreme Court affirmed that in "ordinary driving situations the duty of due care is a ministerial obligation." *Id.* As *Heider* illustrates, the operation of the automobile upon completion of a governmental function does not trigger immunity. *Id.* Sovereign immunity only applies "to acts of judgment and discretion which are necessary to the performance of the governmental function itself." *Id.*

The result tends to be different when the driving is integrated with the governmental function, or when the vehicle itself is used to effect that purpose. Then, the driving itself requires the driver to exercise a higher degree of discretion and judgment. For example, transporting children is the governmental function performed by a school bus driver. And transporting those children by driving a school bus requires more than routine driving. *Linhart v. Lawson*, 261 Va. 30, 36 (2001). While the Supreme Court did not provide a detailed explanation in *Linhart* as to why transporting a bus full of school-aged children necessarily involves the constant exercise of judgment and discretion, any parent or anyone who has ever been inside a school bus would understand the vigilance required by the driver. Monitoring the actions of children inside the bus (often not wearing seatbelts) sets this act of driving apart from driving in routine traffic. Common sense distinguishes the school bus driver in *Linhart* from the one driving an empty bus to the school, who was only "approaching the place *where he would embark on his governmental duty* of transporting children." *Stanfield v. Peregoy*, 245 Va. 339, 345 (1993) (emphasis added) (discussing the holding in *Wynn*, 170 Va. at 590).

Likewise, the Supreme Court has found that operating a government vehicle described as a combination "snowplow/salt truck" to spread salt during a snowstorm requires additional judgment and discretion beyond that involved in ordinary driving. *Id.* at 342, 343-44. The driver in *Stanfield* was involved in an accident while he was actively spreading salt on an icy street. *Id.*

- 6 -

at 342.  The driver's use of the truck to spread salt involved discretion and judgment because he had to "decide whether the conditions of a particular street or intersection required plowing or salting, or both," and "he was required to determine the amount of salt to be applied and the area over which it should be spread."  *Id.* at 343-44.  The Supreme Court observed:

> [p]erhaps if this accident had happened as defendant was driving his truck en route to the area he was assigned to plow and salt, or if it occurred when he was returning to this Department's headquarters after completing his function of plowing and salting, he would have been engaged in "the simple operation" of the truck "in routine traffic," a ministerial act.

*Id.* at 344.  In other words, merely driving between places where the governmental function is performed (here, salting or plowing particular roads), is just ordinary driving.

On the other hand, when first responders respond to emergencies, the government vehicle is being used for the governmental function itself.  During an emergency, driving *is* the job, making it readily distinguishable from ordinary driving *on the way* to the job.  Put differently, the job of carrying out an emergency response requires the driver to engage in special risks that a driver in routine traffic does not.  For this reason, immunity is appropriate when a police officer is engaged in a vehicular pursuit.  *Colby v. Boyden*, 241 Va. 125, 129-30 (1991).  "[A] police officer, engaged in the delicate, dangerous, and potentially deadly job of vehicular pursuit, must make prompt, original, and crucial decisions in a highly stressful situation."  *Id.* at 129.  "Unlike the driver in routine traffic, the officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation."  *Id.*  These situations "involve *necessarily discretionary, split-second decisions* balancing *grave personal risks*, public safety concerns, and the need to achieve the governmental objective."  *Id.* at 129-30 (emphases added).  The throughline is that ordinary driving does not require the serious, discretionary, and immediate decisions that are inherent in emergency response.

- 7 -

The same split-second, discretionary decision-making required in emergency responses also appears in *National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402 (1991), decided just months after *Colby*. There, a fire truck en route to an accident, with emergency lights and headlights operating, drove past the driveway where a car fire was burning. *Id.* at 405. The driver turned around but "overshot the driveway" again. *Id.* He then "stopped the fire truck just beyond the driveway entrance to his right and backed up," to make a "wide right turn into the driveway." *Id.* Unfortunately, the unpaved driveway crossed over railroad tracks, and an oncoming train hit the firetruck. *Id.* This driver was immune because there was no way to "logically distinguish the act of crossing a railroad track without stopping in order to extinguish a fire from running a red light in order to apprehend a traffic offender." *Id.* at 413.

The "special risks" inherent in emergency responses are present regardless of whether a vehicle displays emergency lights or sirens when driving to the emergency. *McBride*, 288 Va. at 457. In *McBride*, for example, because the officers operated their vehicles "in an emergency manner," and in an exercise of "their judgment and discretion about the best means of effectuating a governmental function by embracing the requisite special risks," they triggered the application of sovereign immunity. *Id.* An officer who responded to an accident in an emergency manner, even though he was not formally dispatched to the scene, was also protected. *Smith v. Settle*, 254 Va. 348, 353 (1997). These outcomes stem from the reasoning that "the proper application of sovereign immunity should not be based upon a court second-guessing a split-second decision made by a government employee effectuating a governmental function by embracing special risks." *McBride*, 288 Va. at 456.

But merely having the job of emergency response does not determine whether the driving action itself was discretionary or ministerial. The emergency response cases above are distinguishable from situations where police officers and fire truck drivers have operated their

vehicles merely as a means of transportation—not in an emergency manner. For example, driving a law enforcement vehicle away from a site where judicial process was served involves ordinary driving. *Heider*, 241 Va. at 145. That officer was not immune, and nor was the fire truck driver who responded to a non-emergency public service call, without activating the emergency lights, and made a left-hand turn into a parking lot without yielding to an oncoming vehicle. *Friday-Spivey*, 268 Va. at 389-91. Admittedly the nature of the call—a child locked in a car—sounds like an emergency. *Id.* at 387, 391. But the Supreme Court held that the particular facts of the case did not show that the driver was engaged in anything more than ordinary driving. *Id.* at 390-91. In fact, the driver testified that he was "driving in a nonemergency manner." *Id.* at 390. In essence, the "governmental function" there was not emergency response, with accompanying special risks, but responding to a public service call. Based on the facts, the fire truck driver engaged in ordinary driving, a ministerial activity, on the way to the place where help would be rendered.[3]

Turning to this case, the parties agree that Ellis was performing the government function of garbage collection on the day of the accident. But they disagree about whether Ellis was using judgment and discretion inherent to the task of garbage collection when he ignored a stop sign. Ellis argues that the act of garbage collection should be viewed as a whole and that the entire process of collecting garbage requires judgment and discretion beyond that of ordinary driving. The trial court adopted Ellis's position, finding that the evidence shows that he had to make

---

[3] In determining whether the driving itself was part of the discretionary function, the Supreme Court has emphasized that "[o]bviously, the facts and circumstances in each case are relevant to understanding the precise governmental function at issue and whether effectuating that function requires the exercise of discretion and judgment," but that courts should not look past those facts and "examine[] 'how' the driver chose to respond." *McBride*, 288 Va. at 462. "Instead, we simply ask[] whether an employee of an immune governmental entity, while driving an automobile, was engaged in routine driving or driving that involved the exercise of judgment and discretion." *Id.*

decisions along the route, such as determining how to pick up and empty each individual can and when to empty the truck before continuing.

While we defer to the trial court's factual findings about the decisions Ellis generally makes while completing a garbage route, we find that the law requires a different outcome. The trial court did not conclude that, at the moment of running the stop sign, Ellis was actually exercising discretion and judgment about what to do with this load.[4] Nor could the court have reasonably done so, given Ellis's own testimony that between cans he was not doing anything differently than if he was "just normally driving down the street" in his own car and that all he did between stops was "look for [his] surroundings and make sure all is clear," then "get [the] can, dump it, and go to the next one." There is also no evidence that Ellis was calculating when or how to pick up the next can, or the total weight of his truck, while ignoring the stop sign.

We also find it relevant that, at the time of the accident, Ellis was simply operating the garbage truck as a means of transport. Unlike a first responder driving in an emergency, where the driving is integral to the function of emergency response itself, the manner of driving the garbage truck was not integrated with the function of collecting trash. Ellis was not engaged in "split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective." *Colby*, 241 Va. at 129-30. And, at the time of the accident, the truck was not the means for carrying out the governmental function itself. He was not actively collecting the trash the way the snowplow driver was using his vehicle to salt a street. *See Stanfield*, 245 Va. at 343-44. Instead, Ellis was "driving his truck en route to the area

---

[4] At one point the court commented that the exercise of discretion was continuous and so it necessarily continued as he crossed "over the intersection going through the stop sign without stopping *maybe* as he continues to exercise that discretion and judgment about the load and what he's going to do with that load." (Emphasis added). This is not a factual finding about what Ellis was actually doing in the intersection, but an illustration of the court's mistaken legal conclusion that using a vehicle for ordinary transportation between sites where the functions of picking up cans and assessing the weight of the truck were performed.

he was assigned to [pick up the next can]," where he was "engaged in 'the simple operation' of the truck 'in routine traffic,' a ministerial act." *Id.* at 344. At the moment of impact, Ellis was more like the school bus driver heading to work, *Wynn*, 170 Va. at 595, the fire truck operator driving normally to the non-emergency public service call, *Friday*-Spivey, 268 Va. at 389, and the sheriff who had finished one task (delivering service of process) and was heading off to handle the next item on his to-do list, *Heider*, 241 Va. at 145.

In sum, the evidence shows Ellis was driving normally to reach his next stop when the accident occurred. It was only after he arrived at his next destination that he would use the garbage truck to pick up the next trash can and dump it in his truck. Then Ellis would assess whether the truck was full enough to be emptied. Ellis's driving between trash cans, during which he ran the stop sign and collided with Jolley's car, was a ministerial act. For this reason, the City and Ellis are not entitled to the protection of sovereign immunity.

In reaching this conclusion, we do not suggest that sovereign immunity starts and stops with every house along a garbage route—in Ellis's case, about 800 stops a day. Indeed, the evidence shows that the function of garbage collection is more than just picking up an individual can. But the evidence is equally clear that Ellis was not doing anything other than driving to the place where he would next perform his garbage collection function.[5] In these difficult cases, we must look not to the judgment required of the job as a whole, but to the degree of discretion exercised at the moment of the accident. If it were enough to say that a job generally requires

---

[5] This distinguishes this case from the circuit court decision Ellis relies on, *Turner v. City of Norfolk*, 80 Va. Cir. 369, 370 (City of Norfolk 2010). There, the accident occurred while the garbage truck was pulling away from the curb where it had just collected refuse, and the trial court focused on evidence showing that this garbage collector was "required to use functions of his vehicle, such as an arm grab/lift and a compactor, that no ordinary driver needs to contemplate" while "on city streets in the midst of traffic" and "maneuver the garbage truck around both moving and parked cars, as well as other obstacles, while positioning it next to the garbage containers to be emptied." *Id.* at 379. This case is not before us, so we observe only that Ellis was doing none of these things at the intersection he crossed.

someone to use discretion and judgment, every police officer and fire truck operator would drive under a blanket of immunity, but the Supreme Court has repeatedly rejected this conclusion.

CONCLUSION

The driver of a municipal garbage truck is entitled to sovereign immunity from claims arising in the course of duties requiring the exercise of discretion and judgment to perform the governmental function of garbage collection. But because Ellis was engaged in normal driving behavior at the time of the accident here, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*